The STATE of Ohio, Appellee,

v.

ELLISON, Appellant.

[Cite as *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070875.

Decided Oct. 10, 2008.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald Spring-man Jr., Chief Assistant Prosecuting Attorney, for appellee.

Michael W. Welsh, for appellant.

CUNNINGHAM, Judge.

{¶ 1} Defendant-appellant Ripley C. Ellison challenges her conviction for telecommunications harassment under R.C. 2917.21(B). We find merit to her appeal and reverse her conviction.

## The Facts

{¶ 2} Ellison and Savannah Gerhard were childhood friends but had a falling out during seventh grade. According to Ellison, the fallout occurred when her younger brother accused Gerhard of molesting him. The Hamilton County Department of Job and Family Services ("JFS") investigated the claim and determined that it did not have enough evidence to substantiate that the abuse had occurred.

{¶ 3} As teenagers, Ellison and Gerhard attended the same high school. During the summer of 2007, Ellison posted on her Internet "MySpace" page a picture of Gerhard that was captioned "Molested a little boy," and she stated in her personal profile that she hated Gerhard. Ellison allowed for public, rather than private, viewing of her MySpace page.

{¶ 4} After hearing about the posting from others, Gerhard used the Internet to view Ellison's MySpace page. Gerhard had previously observed a short remark by Ellison on a contemporary's MySpace page that also referred to the molestation accusation. But Ellison never directly communicated these postings to Gerhard, who also had a MySpace account.

{¶ 5} Gerhard complained to authorities at her school about the postings. Ellison removed them from her MySpace page at the request of the school's resource officer investigating Gerhard's complaint. Ellison was then charged criminally for telecommunications harassment under R.C. 2917.21(B).

{¶ 6} At a bench trial, Gerhard confirmed that Ellison had never directly communicated with her over the Internet and that she had sought out the postings. She added, however, that she had felt "harassed" by the postings and that she had overheard Ellison make a similar remark about her at school.

{¶ 7} Ellison testified that she believed her brother's accusations against Gerhard were true. And she gave the following explanation for posting the offensive material: "I think that other people need to know how she is. And she denies everything, but a lot of people believe that she did it. And I was told that she did it. And so I think that other people have a right to know."

{¶ 8} Subsequently, Ellison was convicted on one count of telecommunications harassment. In this appeal, she argues that her conviction was not supported by sufficient evidence and violated her free-speech rights under the federal and state constitutions. We hold that the evidence was not sufficient to support the conviction, and, therefore, we do not address Ellison's freedom-of-speech challenge.

## Standard of Review

{¶ 9} Whether a conviction is supported by sufficient evidence is a question of law that this court reviews de novo.[1] We must determine whether, with the evidence viewed in a light most favorable to the prosecution, it would have convinced a rational factfinder of the defendant's guilt beyond a reasonable doubt.[2]

---

1. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

2. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

## Telecommunications Harassment

{¶ 10} The state prosecuted Ellison under R.C. 2917.21(B), which provides that "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." The state proceeded in this case under a theory that Ellison had posted a "rumor" on the Internet to harass Gerhard.

## Telecommunication

{¶ 11} Ellison contends that the evidence was insufficient to establish that she had made a "telecommunication" where she did not directly contact Gerhard. She concedes, however, that a direct contact is not expressly required by the statutory definition of telecommunication: "the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communication system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." [3]

{¶ 12} And we find it significant that the legislature defined a telecommunication broadly, with words such as dissemination. For these reasons, we decline to hold that a direct contact is required to establish a telecommunication under the statute. In this case, the state presented sufficient evidence of a telecommunication, despite the lack of a direct contact.

## Purpose to Harass

{¶ 13} Ellison contends also that the lack of a direct communication completely contradicted any assertion that she had intended to harass Gerhard when she made the telecommunication.

{¶ 14} Harassment is not defined in the statute, but it is defined in Black's Law Dictionary as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in the person and serves no legitimate purpose." [4] In 1999, the legislature deleted the word "annoy" from R.C. 2917.21(B). Thus, for conduct to rise to the level of criminal harassment under this section of the statute, the accused must have intended to alarm or to cause substantial emotional distress to the recipient, not just to annoy her.

---

3. R.C. 2917.21(E)(3) (incorporating by reference the definition found in R.C. 2913.01[X] ).

4. Black's Law Dictionary (8th Ed.Rev.2004) 733.

{¶ 15} Importantly, the statute creates a specific-intent crime: the state must prove the defendant's specific purpose to harass. The burden is not met by establishing only that the defendant knew or should have known that her conduct would probably cause harassment. The legislature has created this substantial burden to limit the statute's scope to criminal conduct, not the expression of offensive speech. Whether Ellison was liable for defamation was not established in the proceedings below and can be addressed in civil proceedings.

{¶ 16} In this case, the state had the burden of establishing beyond a reasonable doubt that Ellison's specific purpose in making the telecommunication was to harass Gerhard. The state argued that Ellison's posting of the "rumor" after JFS had found the allegation unsubstantiated showed a purpose to harass. But JFS's conclusion did not mean that dissemination of the allegation could not serve the legitimate purpose of warning others of what Ellison believed to be criminal behavior. Moreover, it was undisputed that Ellison never directed a telecommunication to Gerhard despite the opportunity to do so. These facts rendered the state's position untenable. No rational trier of fact, viewing the evidence in the light most favorable to the state, could have been convinced of Ellison's specific intent to harass Gerhard when she made the telecommunication.

{¶ 17} Thus, we hold that the state failed to establish that Ellison had made a telecommunication with the purpose to harass, where she had a legitimate purpose for posting the accusation against Gerhard on the Internet, and where Ellison did not directly telecommunicate with Gerhard. Accordingly, we sustain the assignment of error.

{¶ 18} We reverse the judgment of conviction and discharge Ellison from further prosecution.

Judgment accordingly.

HILDEBRANDT, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

{¶ 19} It is a scary thought that someone could go to jail for posting a comment on the Internet. If so, we could not build jails fast enough.

{¶ 20} The statute on telecommunications harassment is the successor to the former telephone-harassment law. It is designed to prohibit harassing or threatening calls. Of course the calls may now be made over a traditional phone line, a cellular phone, or the Internet. But posting an annoying—but nonthreatening—comment on a website is not a crime under this statute. It might well be a civil wrong, but it is not jailable. The First Amendment would not allow

punishment for making a nonthreatening comment on the Internet, just as it would not for writing a newspaper article, posting a sign, or speaking on the radio.