[Cite as *State v. Pleatman*, 2016-Ohio-7659.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160234 |
| | | TRIAL NO. C-15CRB-3915 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| JACQUELINE PLEATMAN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 9, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Paul Croushore*, for Defendant-Appellant.

**DEWINE, Judge.**

{¶1} This is an appeal of a conviction for telecommunications harassment. Jacqueline Pleatman wanted to back out of a real estate deal. When the seller refused to cancel the contract, Ms. Pleatman set about making his life miserable by sending him multiple vitriolic emails and engaging in other harassing behavior. Her conviction resulted from one of the emails.

{¶2} Ms. Pleatman now challenges evidentiary decisions made by the trial court, contends her conviction was based on insufficient evidence and was against the weight of the evidence and argues that the telecommunications-harassment statute, as applied to her, is unconstitutional. We affirm the judgment of the trial court.

## I. Background

{¶3} In 2013, Ms. Pleatman and her husband contracted with Grant Troja to buy his house in the Village of Indian Hill. Soon thereafter, the Pleatmans learned that a convicted felon was being released from prison and would live next door to them. The Pleatmans sought to back out of the contract, but Mr. Troja insisted they go through with the deal.

{¶4} In an attempt to cancel the sale, Ms. Pleatman sent to Troja what he estimated as "close to a dozen" emails. At some point, Ms. Pleatman also put flyers in mailboxes in Troja's neighborhood recounting her version of the dealings with Troja and his real estate agents. In the flyer, Ms. Pleatman claimed that her family was being harassed and sued by Troja, the real estate agency and a mortgage company. As a result of the emails and the flyer, Mr. Troja went to the Indian Hill Rangers on November 15, 2013, seeking their help in stopping Pleatman from emailing him. Captain Michael Dressel spoke with Pleatman's attorney and asked him to tell her to quit contacting Troja. Mr. Troja eventually filed a civil complaint against the Pleatmans seeking specific performance of the real estate contract and damages.

{¶5}    Notwithstanding Captain Dressel's conversation with her attorney, Ms. Pleatman sent an email on December 15, 2014, to Troja, her attorney, and Troja's real estate agent.   In the email, Ms. Pleatman discussed the ongoing dispute between the parties.  It read in part:

> You are a real SOB and it has nothing to do with us.  Has it ever occurred to you that you have created a nightmare by suing us?  Do you care that you have caused dozens of people pain, stress, money and time? * * * I don't think you care but I wanted you to know that I think you are a despicable specimen of mankind.

Ms. Pleatman went on to suggest involving Arby's corporation.   Mr. Troja was the president of a group that managed 65 Arby's franchises.

> I wonder what the executives at Arbys corporation think of you now. From what I have been told they see you as a loose cannon and a liability who does not represent the Arbys "family friendly reputation." They may be right.

The email also indicated that Pleatman knew that Troja had gone to the Indian Hill Rangers in an attempt to stop her from contacting him:

> I expect that you will immediately contact your attorney after reading this email and that as usual you will threaten to call the Rangers on me because you don't want to hear the truth and you don't want to assume one ounce of liability upon yourself.  Boo Hoo.  Grow up and get some balls because you can either end this mess or I will take you down in every legal way possible.  This is not a threat, it is a fact.

{¶6}    A month later, Mr. Troja received from Arby's corporate office a "press release" that Pleatman had sent to the company.  The press release, captioned "Arby's brand compromised by a scandal involving a high level Arby's executive," recounted Pleatman's version of Troja's lawsuit.   In the press release, Ms. Pleatman suggested

"Arby's wholesome reputation may be irreversibly compromised as a direct result of the unethical and immoral actions of Arby's executive Grant Troja."

{¶7} After being told about the press release, Mr. Troja filed a criminal complaint with the Indian Hill Rangers. Ms. Pleatman was charged with violating code section R.C. 2917.21(B)(1), which makes it a crime to "make * * * a telecommunication * * * with purpose to abuse, threaten, or harass another person." The case was tried to a jury, which found Pleatman guilty. The trial court sentenced her accordingly.

## II. Details about the Civil Lawsuit were Irrelevant to the Criminal Trial

{¶8} In her first assignment of error, Ms. Pleatman claims that the trial court erred when it did not allow in evidence of the underlying real estate dispute between the Pleatmans and Troja. She argues that she was denied her Sixth Amendment right to confront Troja when the court did not permit her defense counsel to ask questions about the civil lawsuit that was pending between the parties.

{¶9} The Sixth Amendment guarantees a defendant's right "to be confronted with the witnesses against him." The right doesn't guarantee, however, a defendant's right to cross-examine witnesses about evidence irrelevant to the charged offense. *See State v. Leslie*, 14 Ohio App.3d 343, 346, 471 N.E.2d 503 (2d Dist.1984). We review a trial court's decision not to admit evidence under an abuse-of-discretion standard. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 86.

{¶10} Here, the court explained to defense counsel and the prosecutor how far they could inquire into the underlying dispute: "The details about legal positions and what's going back and forth and the—the details about whether there was a contract [to buy the house] and whether there wasn't, that has absolutely no bearing on whether or not her purpose in sending these communications were established [sic] by a statute." Consistent with the court's explanation, at issue in the trial was whether Pleatman intended to abuse, threaten or harass Troja. The trial court did not abuse its discretion when it excluded evidence about the civil lawsuit, which was irrelevant to the issue of Pleatman's intent in sending the emails. The first assignment of error is overruled.

### III. Evidence that Pleatman Intended to Abuse, Threaten or Harass

{¶11} Ms. Pleatman maintains in her second assignment of error that her conviction was based on insufficient evidence and against the weight of the evidence because there was no evidence that she intended to "abuse, threaten or harass" Troja with the email that she sent him.

{¶12} Ms. Pleatman was convicted under R.C. 2917.21(B)(1), which makes it a crime to "make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." "[F]or conduct to rise to the level of criminal harassment under this section of the statute, the accused must have intended to alarm or to cause substantial emotional distress to the recipient, not just to annoy [him]." *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 14.

{¶13} In *Ellison*, this court considered whether a post on the defendant's public MySpace account that stated a person was a child molester amounted to the "harassment" of the person. We concluded that no rational trier of fact could have been convinced that the defendant had the intent to harass the other person because she had a legitimate reason for posting the message, that is, to warn others about someone whom she believed was a child molester. *Id.* at ¶ 16. Ms. Pleatman argues that she also had a legitimate purpose in sending the December 15, 2014 email—to attempt to settle the civil lawsuit filed by Troja. We are not convinced. Far from attempting to arrive at a settlement of the suit, Pleatman's email—particularly, in light of the flyers she distributed and messages she sent Troja—seemed aimed at exacerbating the situation. The email also included an implied threat to harm Troja's relationship with Arby's. That Ms. Pleatman intended the threat is underscored by the "press release" she later sent to Arby's airing her grievances against Troja.

{¶14} We conclude that the state adduced substantial, credible evidence from which the jury could reasonably have concluded that the state had proved beyond a

reasonable doubt the elements of telecommunications harassment. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In regard to the manifest-weight argument, our review of the entire record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Pleatman's conviction and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). The second assignment of error is overruled.

### IV. The Constitutional Argument is Waived

{¶15} In the final assignment of error, Ms. Pleatman argues that R.C. 2917.21(B)(1) violates her First Amendment rights. Before considering the merits of Pleatman's argument, however, we must determine whether she preserved the issue for our review.

{¶16} "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. The general rule applies likewise to constitutional claims. *Awan* at 122. Thus, "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *Awan* at syllabus.

{¶17} Ms. Pleatman maintains that she did raise the issue during the trial and points to defense counsel's Crim.R. 29 argument:

There is no such basis for saying you can't communicate with somebody.

She has an absolute First Amendment right to communicate with him,

your Honor. There has to be a prohibition, a legal prohibition on her

communicating with him in order for there to be an offense. And there is no such thing.

{¶18}   Although counsel did mention the First Amendment, nowhere did he suggest that the statute is unconstitutional as applied to Pleatman. We conclude that the comments did not act to preserve the issue for appeal.

{¶19}   Of course, "[w]e may, in our discretion, review the issue of the statute's constitutionality for plain error. But we enforce the waiver doctrine unless there is 'some extraordinary reason to disregard it.' " (Internal citation omitted.) *State v. Flannery*, 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, ¶ 7, quoting *Zawahiri v. Alwattar*, 10th Dist. Franklin No. 07AP-925, 2008-Ohio-3473, ¶ 14. Here, we find no extraordinary reason to disregard the waiver doctrine. The third assignment of error is overruled.

{¶20}   We therefore affirm the judgment of the trial court.

Judgment affirmed.

**FISCHER, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.