[Cite as *In re C.W.*, 2019-Ohio-5262.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: C.W. | : | APPEAL NOS. C-180677 |
| | | C-180690 |
| | : | TRIAL NOS. 17-2468 |
| | | 17-2470 |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: December 20, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Finney Law Firm, LLC*, and *Bradley M. Gibson*, for Appellant C.W.

**Z**AYAS**, Judge.**

{¶1} Following a bench trial before a magistrate, 12-year-old C.W. was adjudicated delinquent for committing acts that had he been an adult would have constituted telecommunications harassment, under R.C. 2917.21(B)(1), and inducing panic, under R.C. 2917.31(A)(3). For the following reasons, we reverse the juvenile court's judgments.

**Facts and Procedural History**

{¶2} This case stemmed from two comments made by C.W. to an Instagram post, one of which stated, "DUMB FUCK COME TO SYCAMORE YOU WONT," and another which stated, "I'll square up to these stupid coons." C.W., a Sycamore Junior High School student, published these comments on the Instagram page of the so-called "Clown Clan," http://www.instagram.com/clown.clann, from his cell phone while he was at home on the evening of September 29, 2016. He deleted them approximately two hours later.

{¶3} As explained by the parties, the context of these comments was "the odd phenomenon of disturbances caused by clowns." Frank Forsthoefel, the Superintendent of the Sycamore Community School District, testified that at that time there were reports in the national and local news about alleged attacks involving people dressed up as clowns, as part of a "clown craze."

{¶4} Forsthoefel testified that, for instance, early on September 29, there was a report from the Reading school district that a clown allegedly assaulted someone and made a threat against the district, which prompted its closure on September 30. Forsthoefel explained that "threats" were also made against Colerain High School.

2

{¶5}    Forsthoefel testified that on the morning of September 30, after receiving a call from the principal of Sycamore Junior High School regarding "posts made on social media that [were] causing some upheaval in her building," he requested additional police officers for the school. Forsthoefel testified to a significant disruption in the school system.

{¶6}    Damon Davis, the assistant principal of Sycamore Junior High School, learned of C.W.'s comments on the Instagram page on the morning of September 30, after another student, J.S., showed Davis a screenshot that she took of C.W.'s comments, prior to C.W. deleting them. J.S. testified that C.W.'s comments were in response to the Clown Clan's Instagram post. J.S. testified, "[t]he clowns posted a picture and they said – I think they said, what school do you want us to come to?"

{¶7}    Davis interviewed C.W. at school about his comments and had C.W. "write out in his own words what had taken place." C.W. admitted to Davis that he made the comments and later deleted them. Davis testified that C.W. told him that he wanted to see what the clowns looked like and that he wanted the clowns "to come to Sycamore so that he could fight them and see what they would do to other people." Davis testified that comments posted by C.W. and two other students caused a disruption at the school that day, as students at the school "felt scared," and "want[ed] to see a counselor." Davis testified that as a result of the disruption a school-wide pep rally scheduled for that afternoon was cancelled.

{¶8}    At the conclusion of a two-day trial, the magistrate found C.W. delinquent for having committed telecommunications harassment and inducing panic. C.W. timely objected to the magistrate's decision, which was later affirmed by the juvenile court. C.W. now appeals, asserting five assignments of error. For ease of discussion, we address C.W.'s assignments of error out of order.

**Legal Analysis**

## I.    Telecommunications Harassment

{¶9}    In his second assignment of error, C.W. claims that the state presented insufficient evidence to adjudicate him delinquent for telecommunications harassment in violation of R.C. 2917.21(B)(1).  We agree.

{¶10} "In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt."  *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 19, citing *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} R.C. 2917.21(B)(1) provides: "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."  C.W. contends that the state did not prove "purpose," or C.W.'s specific intent to "abuse, threaten, or harass another person," largely because C.W. told assistant principal Davis that he did not intend to threaten or harm anyone and prepared a written statement expressing the same.  The state argues that direct and circumstantial evidence demonstrated C.W.'s intent.

**Telecommunication**

{¶12} "Telecommunication" means "the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications

4

system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." R.C. 2917.21(E)(3) (incorporating by reference the definition found in R.C. 2913.01(X)).

{¶13} Direct contact is not required to establish a telecommunication under the statute. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 12 (1st Dist.). And, R.C. 2917.21(B) does not require more than a single transmission. *State v. Stanley*, 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 13. In this case, it is undisputed that C.W. made a telecommunication. The evidence of C.W.'s comments to the Instagram post were part of the record via the screenshot that J.S. took, and C.W. admitted to Davis and in his written statement that he published the comments.

### Purpose to Abuse, Threaten, or Harass Another Person

{¶14} "The critical inquiry of telecommunications harassment is not whether the recipient of the communication was in fact threatened [or] harassed * * * by the communication, but rather, whether the purpose of the person who made the communication was to abuse, threaten, or harass the person called." *State v. Kronenberg*, 2015-Ohio-1020, 2015 WL 1255845, ¶ 15 (8th Dist.), citing *State v. Bonifas*, 91 Ohio App.3d 208, 211-212, 632 N.E.2d 531 (3d Dist.1993). "In the absence of direct evidence, a defendant's purpose or intent to threaten, harass, or abuse may be established by the facts and circumstances surrounding the communication." *City of Hamilton v. Combs*, 2019-Ohio-190, 131 N.E.3d 297, ¶ 20 (12th Dist.), citing *Kronenberg* at ¶ 15. A person acts purposely "when it is his specific intention to cause a certain result, or, when the gist of his offense is a prohibition against conduct of a certain nature, regardless of what the offender

5

intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶15} In other words, the statute creates a specific-intent crime which requires the state to prove that the defendant's specific purpose is to harass. "The burden is not met by establishing only that the defendant knew or should have known that her conduct would *probably* cause harassment. The legislature has created this substantial burden to limit the statute's scope to criminal conduct, not the expression of offensive speech." (Emphasis added.) *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 15 (1st Dist.).

{¶16} R.C. 2917.21(B) does not define "abuse," "threaten," or "harass." But, "[h]arassment" has been defined as "[w]ords, conduct, or action ([usually] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in the person and serves no legitimate purpose." *Ellison* at ¶ 14, citing *Black's Law Dictionary* 733 (8th Ed.Rev.2004). The legislature deleted the word "annoy" from R.C. 2917.21(B) in 1999; "[t]hus, for conduct to rise to the level of criminal harassment under this section of the statute, the accused must have intended to alarm or to cause substantial emotional distress to the recipient." *Ellison* at ¶ 14. "Threaten" has been defined as "an expression of an intention to inflict evil, injury, or damage on another usu[ally] as retribution or punishment for something done or left undone." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 36, citing *Webster's Third New International Dictionary* 2382 (1986). "It connotes almost any expression of intent to do an act of harm against another person irrespective of whether that act is criminal." *Cress* at ¶ 36, citing *State v. Moyer*, 87 W.Va. 137, 104 S.E. 407 (1920). And finally, "abuse" has been defined as "cruel or violent treatment of someone; [specifically] physical or mental

6

maltreatment, often resulting in mental, emotional, sexual, or physical injury." *Black's Law Dictionary* (11th Ed.2019).

{¶17} In this case, the state had the burden of establishing beyond a reasonable doubt that C.W.'s specific purpose in making the telecommunication was to abuse, threaten or harass another person. The state argues that the text of C.W.'s comments alone revealed his purpose was to harass, and also that C.W. admitted to Davis that his intention was to fight the clowns that he invited to his school and therefore his comment was a threat. Neither argument satisfies the state's burden of proof under the statute.

{¶18} The overarching problem with the state's case is that "another person" was never established. Rather, it was assumed that there was (1) a person behind the Clown Clan Instagram account and (2) that that person dressed up as a clown and terrorized local schools and was therefore the intended recipient of C.W.'s comments.

{¶19} While it might have been true that a person was behind the Clown Clan Instagram page, the state never established this as a fact but merely asserted that C.W.'s comments were directed at this supposed person. As the juvenile court suggested, "the identity of the actual Clown Clan is immaterial," but the telecommunications harassment statute still requires that the telecommunication be directed to *another person*. "Person" is defined in the Revised Code to mean "an individual, corporation, business trust, estate, trust, partnership, and association." R.C. 1.59(C). The record is devoid of any evidence establishing the existence of a person behind the Clown Clan Instagram account. Proving that an actual person is behind something like a social-networking account becomes increasingly important

in an era when Twitter bots and other artificial intelligence troll the internet pretending to be people.

{¶20} Additionally, while it might have been true that the supposed person behind the Instagram page also dressed up as a clown and terrorized people, the state never established this as a fact or even implicitly argued it. Establishing this as a fact was key because, as discussed below, C.W.'s comments were directed at a person or persons who dressed up as clowns and threatened local schools. Thus, the second assumption needed to have been true for C.W.'s comments to have been directed at this person—the only person the state argued was a victim of C.W.'s telecommunications harassment under R.C. 2917.21(B)(1). Because the state never established facts to support its assumptions, it failed to establish an element of the crime.

{¶21} Not only did the state not establish the existence of another person, it also did not establish that C.W.'s purpose was to abuse, threaten, or harass. Regarding his first comment ("DUMB FUCK COME TO SYCAMORE YOU WONT"), as the juvenile court stated, it seems that C.W.'s purpose was to "provoke a potentially violent response" from the Clown Clan, or at the very least to goad or encourage the Clown Clan to visit his school. After all, C.W.'s comment was published in response to the Clown Clan's Instagram post asking the public and followers of their Instagram page to comment with a school of their choice for them to visit next. In this context, C.W.'s comment was *invited* by an allegedly-violent group of people who dressed up as clowns and wanted to terrorize schools. C.W.'s purpose with his response—provoking or goading the Clown Clan for a potentially violent encounter—does not equate to alarming the Clown Clan or causing them substantial emotional distress.

8

{¶22} Regarding his second comment ("I'll square up to these stupid coons"), C.W.'s purpose seems to be a public boast that he intended to assume a fighting position if the clowns did indeed visit his school. While the state emphasizes the terms "square up" and "coons," again, the context matters. C.W. made this comment in an environment of apparent hysteria by area school districts and concern by several students and parents over potentially violent disguised attackers. In this context, it appears that C.W. was declaring in crude terms that he would defend himself against the would-be attackers.

{¶23} Moreover, according to C.W.'s written statement, which he prepared at the direction of Davis and which Davis found credible, C.W. commented to the Clown Clan Instagram post "because I heard they had been doing scary things but I wanted to know like exactly what they did and what they looked [like]. After this my peers started showing me this and what I had said so I thought that deleting it would help[.] I had no idea it would scare people." By assistant principal Davis's own testimony, C.W. expressed to him that he did not intend for his comments to be a threat. Davis also testified that C.W. told him that he wanted them (the clowns or the Clown Clan) to come to Sycamore so that he could see them or fight them. But, as discussed above, the context reveals that C.W.'s specific intent was not to threaten.

{¶24} Getting back to the main problem with the state's case, C.W.'s comments were directed to the Clown Clan. At no point did C.W. mention to Davis or anyone else that he wanted to fight the supposed person behind the Instagram account, or indicate that he knew who that supposed person might be or whether the supposed person dressed up as a clown to scare and assault people.

{¶25} C.W.'s second assignment of error is sustained.

## II.  Inducing Panic

{¶26}  In his fourth assignment of error, C.W. claims that his adjudication for inducing panic in violation of R.C. 2917.31(A)(3) is invalid as a matter of law because he did not commit a predicate offense.  We agree.

{¶27}  We review questions of law de novo.  *City of Parma v. Burgos*, 8th Dist. Cuyahoga No. 107797, 2019-Ohio-2445, ¶ 3.  The state argues that because C.W. failed to file objections to the magistrate's decision on this adjudication, under the case numbered 17-2470, our review is limited to plain error.  We disagree, as C.W. did in fact file objections to the magistrate's decision adjudicating him delinquent for inducing panic.  Although the case number "17-2470" was missing from the caption of C.W.'s objections in what appears to have been a clerical error, C.W.'s objections to the magistrate's decision are specific and particular in accordance with Juv.R. 40.  Of note, his argument against his adjudication for inducing panic occupies 13 of the 58 pages of objections.  Moreover, upon objections to the magistrate's decision, the juvenile court heard oral argument from both sides regarding both charges, telecommunications harassment and inducing panic, and issued a judgment as to each charge.

{¶28}  R.C. 2917.31(A)(3) provides: "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by  * * *  [c]ommitting any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."

{¶29}  In light of sustaining C.W.'s second assignment of error, whereby we reverse the juvenile court's judgment adjudicating him delinquent of

10

telecommunications harassment, the adjudication for inducing panic now has no predicate offense. Without the predicate offense of telecommunications harassment or any other predicate criminal offense to serve as an essential element of the charged offense of inducing panic, no rational trier of fact could find the essential elements of the crime of inducing panic proven beyond a reasonable doubt. *See State v. Wellington*, 4th Dist. Gallia No. 17CA1, 2017-Ohio-8596, ¶ 16. Accordingly, we sustain C.W.'s fourth assignment of error.

### III. The Appeal of 17-2468 is Not Moot

{¶**30**} Finally, the state argues that the appeal of the case numbered 17-2468 (telecommunications harassment) is moot because C.W. satisfied a judgment against him prior to requesting a stay of the juvenile court's order in that case. C.W.'s sentence under this adjudication was to "submit to the lawful care, custody, and control of parent, guardian, custodian and teachers and to obey all laws." He filed a motion to stay his sentence on October 31, 2018. There is nothing in the record to demonstrate that C.W. served his sentence prior to filing for a stay.

{¶**31**} Additionally, "[t]he completion of a sentence is not voluntary and will not moot an appeal if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide." *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 26; *see State v. Farris*, 1st Dist. Hamilton No. C-150567, 2016-Ohio-5527, ¶ 4. Because he moved to stay his sentence, C.W.'s appeal of his telecommunications harassment adjudication is not moot.

## Conclusion

**{¶32}** C.W.'s second and fourth assignments of error are dispositive of this appeal. Therefore, we need not address C.W.'s first and third assignments of error because they are moot.

**{¶33}** The juvenile court's judgments adjudicating C.W. delinquent are reversed, and C.W. is discharged from further prosecution for the offenses.

Judgment accordingly.

**MOCK, P.J.** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.