[Cite as *State v. Neal*, 2023-Ohio-584.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220195 |
| | | TRIAL NOS. 21-TRC-25673-A |
| Plaintiff-Appellee, | : | 21-TRC-25673-B |
| | | 21-TRC-25673-C |
| | : | 21-TRC-25673-D |
| vs. | | |
| | : | |
| | | *O P I N I O N.* |
| RODNEY NEAL, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed In Part; Appeal Dismissed in Part

Date of Judgment Entry on Appeal: March 1, 2023

*Andrew W. Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, *Connor Wood*, Appellate Director, *Rebecca Barnett*, Appellate Director, and *Victoria L. Lowry*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Green Law Firm, LPA* and *F. Harrison Green*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   As Sheila Allen visited her friend Joseph Stiffend on a fall evening in 2021, the two were startled by a loud crash outside.  After rushing outside to try to ascertain the cause of the commotion, the pair noticed Ms. Allen's parked vehicle wrecked from behind and largely totaled.  Just up the road, planted in a neighbor's yard, defendant-appellant Rodney Neal was sitting in the driver's seat of the vehicle that had apparently struck her car.  It turns out that he was also intoxicated, which ultimately prompted Mr. Neal being charged with one count of operating a vehicle while intoxicated, one count of refusing to submit to a chemical test, and one count of operating a vehicle without reasonable control.  After the trial court convicted him of all three charges, Mr. Neal appealed, insisting that the state failed to present sufficient circumstantial evidence to sustain his conviction and that his conviction runs counter to the manifest weight of the evidence.  After reviewing the evidence and record before the trial court, however, we disagree with Mr. Neal's arguments, overrule his assignments of error, and affirm the trial court's judgments.

I.

{¶2}   On the day of the accident, Mr. Neal visited two bars with his friends Demarcus Blye Jr. and Trenton Grant to celebrate the former's birthday.  Driving in Mr. Blye's Mazda, the three men were on their way back to his apartment when the accident occurred.  After the Mazda collided with Ms. Allen's car, it caromed off to the right before stopping in a front yard roughly 100 yards down the road.

{¶3}   Ms. Allen and Mr. Stiffend both testified that, approximately three to four minutes after hearing the crash, the two ventured out to investigate, only to find Ms. Allen's car totaled, and Mr. Neal's car nearby, with smoke billowing from the hood.

While Ms. Allen called 911, Mr. Stiffend witnessed one occupant of the vehicle run from the rear driver's side of the car, and another person dash away from the passenger's side of the car. He also observed Mr. Neal yelling in pain while sitting in the driver's seat of the vehicle. Ms. Allen took some pictures of the scene that the state submitted into evidence at trial.

{¶4}    After the fire department reported to the scene and spoke with Mr. Neal, Officers Adaryll Birch, Kevin Byrne, and Thomas Stanton arrived. Mr. Neal was situated in the driver's seat with his feet outside the car (and obviously injured) when he spoke to the fire department and Officer Birch. Officer Birch testified that he never saw Mr. Neal operating the car in any fashion but said that Mr. Neal had control over the vehicle because he was "behind the [wheel of] the vehicle, able to access the keys and the steering wheel." The officers observed Mr. Neal slurring his speech at the crash site with bloodshot eyes, and they noticed a heavy odor of alcohol. However, no officer found a set of keys at the scene, and the car, although damaged, was not running at the time.

{¶5}    After initially running away, Mr. Grant ultimately returned to the scene. When the police arrived, Mr. Grant spoke to Officer Byrne and admitted that he had been a passenger in the car when it crashed. The officer did not ask him who was driving nor did he volunteer that information—and the officers never asked Mr. Neal that question either.

{¶6}    At the scene, Mr. Neal resisted both the fire department's medical providers and Officer Birch's efforts to obtain personal information from him. Although he refused medical treatment, Officer Birch overrode his decision, citing concern for Mr. Neal's well-being given that he could not even stand under his own

power, and he was dispatched to a local hospital. Officer Stanton met with Mr. Neal at the hospital and requested a blood-alcohol test, which Mr. Neal refused. According to Officer Stanton, Mr. Neal was combative in the hospital and uncooperative towards hospital staff.

{¶7} The state ultimately charged Mr. Neal with operating a motor vehicle under the influence of alcohol or drugs under R.C. 4511.19(A)(1)(a), an OVI-refusal, under R.C. 4511.19(A)(2), and operating a vehicle without being in reasonable control of the vehicle under R.C. 4511.202. At trial, a dispute arose as to whether Mr. Neal actually drove the vehicle at the time of the accident. Mr. Blye and Mr. Grant both testified that Mr. Blye was driving that night (rather than Mr. Neal). Mr. Grant further explained they had all been drinking that night, and that Mr. Neal (for unknown reasons) moved to the driver's seat from the passenger seat after the crash as Mr. Grant exited the vehicle.

{¶8} Although he confirmed aspects of Mr. Grant's testimony, Mr. Blye insisted that he had not consumed any alcohol that evening because he was the designated driver. After the crash, Mr. Blye—who was on probation for an OVI and who did not have a driver's license at the time—told the two other occupants he had to leave before quickly fleeing the scene on his own. Both Mr. Grant's and Mr. Blye's accounts conflicted with Mr. Stiffend's testimony, who saw two occupants leave the vehicle at the same time, neither of whom departed from the driver's seat of the car. In closing arguments, the state stressed the seriousness of Mr. Neal's injuries combined with the existence of a center console between the driver's and passenger's seat, which rendered it nearly impossible for him to have moved from the passenger's seat to the driver's seat after the crash.

4

{¶9} Ultimately, the trial court found Mr. Neal guilty on all three counts. Notwithstanding Mr. Grant's and Mr. Blye's testimony, the court found that the two were either "intoxicated or acted in a way that indicates their untrustworthiness." On the other hand, the court did find Mr. Stiffend to be a credible witness. Mr. Neal was sentenced to 180 days confinement with 150 days suspended and 30 days to be served in the Community Alternative Sentencing Center program. Mr. Neal then timely filed this appeal.

{¶10} Although Mr. Neal filed an appeal for four charges, cases 21-TRC-25673-A-D, based on a review of the record, he was only charged with the three aforementioned charges. To the extent Mr. Neal pursues an appeal to a fourth charge, we dismiss that appeal for lack of any conviction.

II.

{¶11} Because Mr. Neal's first and second assignments of error intertwine, we consider them together for ease of analysis. Mr. Neal maintains that none of the state's evidence at trial sufficiently demonstrated that he "operated" the vehicle as required for an OVI offense under R.C. 4511.191(A)(1)(a). In a related vein, he posits that the state failed to present sufficient circumstantial evidence that he caused or had caused the movement of a vehicle to sustain his conviction.

{¶12} "To determine whether a conviction is supported by sufficient evidence, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

5

{¶13} And " '[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.' " *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279. Finally, whether the evidence sufficed to support the conviction presents a legal question that we review de novo. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.).

{¶14} The statute at issue reads in part: "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.191(A)(1)(a). And the term "operate" under the Revised Code is defined as "to cause or have caused movement of a vehicle * * *." R.C. 4511.01(HHH); s*ee State v. Wilson*, Ohio Slip Opinion No. 2022-Ohio-3202, ¶ 10 ("Thus, today, the definition of 'operate' in R.C. 4511.01(HHH) applies by its own terms to * * * R.C. Chapters 4511 and 4513."). And "[f]or purposes of R.C. 4511.19, to 'have caused' movement of a vehicle is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence." *State v. Anthony*, 2016-Ohio-2905, 64 N.E.3d 591, ¶ 21 (5th Dist.), citing *Jenks*.

{¶15} Circumstantial evidence is " 'proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally flow according to the common experience of people.' " *State v. Armstead*, 1st Dist. Hamilton No. C-200417, 2021-Ohio-4000, ¶ 13, quoting *Shabazz* at ¶ 18. In this case, the trial court in large part focused on Mr. Stiffend's testimony—he saw two individuals fleeing from Mr. Neal's car, from each side of the car, and then

6

found Mr. Neal situated in the driver's seat of the car. Further bolstering this conclusion, testimony indicated that Mr. Neal could not move from the driver's seat of the car on his own due to his injuries and that the center console made it highly improbable that he could have moved from the passenger's seat to the driver's seat in the aftermath of the accident as the defense claimed. Moreover, all three officers testified to Mr. Neal being inebriated in some fashion.

{¶16} Mr. Neal, in his defense, emphasizes the following: his legs were outside of the vehicle while he sat in the driver's seat, no key was in the ignition at the time, the vehicle was stationary, and no testimony or evidence shows that he drove the vehicle during the incident. According to Mr. Neal, the happenstance of his sitting, post-accident, in the driver's seat fails to establish that he actually piloted the car.

{¶17} As he surveys the relevant caselaw, Mr. Neal endeavors to distinguish cases where courts have found sufficient circumstantial evidence to convict defendants of an OVI offense. *See State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 34 (finding sufficient circumstantial evidence where a witness saw only the defendant in the vehicle, sleeping in the driver's seat, but the turn signal was activated, the vehicle was in gear, and the key was in the ignition with the car running); *State v. Barnard*, 5th Dist. Stark No. 2010-CA-00082, 2010-Ohio-5345, ¶ 30-32 (finding sufficient evidence where the defendant was alone, strapped in the driver's seat, and defendant did not deny driving); *City of Cleveland v. Crawford*, 8th Dist. Cuyahoga No. 102110, 2015-Ohio-2402, ¶ 19 (finding sufficient evidence where a vehicle sideswiped another vehicle, and police officers saw defendant stepping out of the vehicle with keys in his hands and visibly inebriated). He also highlights a case where this court found insufficient evidence to sustain an OVI conviction. *State v. Anderson*,

7

1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 35 (finding insufficient evidence where defendant was unconscious in the driver's seat of a vehicle, the car was turned off, and parked in a parking lot, the driver's side door was open, but keys were in the ignition).[1]

{¶18}  Although, to be sure, no witness testified to observing Mr. Neal driving the vehicle, abundant circumstantial evidence supports that conclusion, a point reinforced by *Anderson*.  Unlike in *Anderson*, Mr. Neal's car was not parked in a parking lot—his car was "wrecked * * * in the street."  *Id*. at ¶ 31.  The fact that it was wrecked, coupled with the condition of Ms. Allen's car, presents compelling evidence that the vehicle had recently been "operated," even if the keys vanished.  *See Barnard* at ¶ 28, 30 ("We agree with the appellant that the evidence did not demonstrate that the vehicle was running or that the appellant had the keys to the vehicle.  However, we find under the facts of this case the evidence was sufficient to infer that appellant had operated the vehicle. * * * [T]he officers came upon appellant's vehicle, stranded on a medium island after having run over a number of orange traffic cones.").  Mr. Stiffend's testimony about the loud noise, seeing the aftermath of the crash, and observing individuals leap out of the car certainly supports a conclusion that Mr. Neal was the driver.  And, of course, officers found Mr. Neal sitting in the driver's seat at the scene, and they noted the difficulty (in his condition) of surmounting the center console in the car to move from the passenger seat to the driver's.

---

[1] Mr. Neal also cites to older OVI Ohio cases that analyze the meaning of the word "operate," but R.C. 4511.01(HHH) was added by the Ohio Legislature on August 2, 2002, and because cases before this date do not analyze R.C. 4511.01(HHH), they are largely irrelevant. *See* 2001 Ohio SB 123.

{¶19} All of this circumstantial evidence, construed in the state's favor, certainly supports Mr. Neal's conviction. Therefore, we overrule his first and second assignments of error.

III.

{¶20} Finally, Mr. Neal argues that the trial court erred in convicting him against the manifest weight of the evidence, focusing predominantly on the trial court discrediting the testimony of Mr. Blye and Mr. Grant.

{¶21} In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶22} And "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶23} To be sure, the testimony of Mr. Grant and Mr. Blye provided countervailing evidence that the trial court could have believed. But we see nothing

amiss in its refusal to credit their accounts, particularly when considered against the array of evidence we have highlighted above: "the trier of fact is in a better position to observe the witnesses' demeanor and to weigh their credibility, [so] the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact." *State v. Blount*, 1st Dist. Hamilton No. C-180296, 2019-Ohio-3498, ¶ 9, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶24}** Similar to this case, in *Blount*, this court concluded that the defendant was the one operating the vehicle while under an OVI suspension, despite two defense witnesses testifying that someone other than defendant drove the car. *Id.* There, the trial court concluded that the witnesses lacked credibility because of the discrepancies in their accounts of the events, and this court deferred to the trial court. *Id.* at ¶ 9. The trial court found that both Mr. Blye and Mr. Grant were untrustworthy based on their actions and their inebriated states—and, as the factfinder, it sat in the best position to make that determination. And simply because the trial court relied on the state's theory and Mr. Stiffend's testimony does not make Mr. Neal's conviction against the manifest weight of the evidence. *See Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, at ¶ 29, quoting *Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, at ¶ 17. Therefore, we overrule Mr. Neal's third assignment of error.

\* \* \*

**{¶25}** In light of the foregoing analysis, we overrule Mr. Neal's assignments of error and affirm the judgments of the trial court. And to the extent that Mr. Neal appeals the "D" case, we dismiss that appeal for lack of a conviction.

Judgments affirmed in part and appeal dismissed in part.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.

10

Please note:

The court has recorded its entry on the date of the release of this opinion.