[Cite as *Conneaut v. Riley*, 2025-Ohio-1705.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| CITY OF CONNEAUT, | **CASE NO. 2024-A-0101** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Conneaut Municipal Court |
| MAUREEN RILEY, | |
| Defendant-Appellant. | Trial Court No. 2023 CRB 00369 |

## OPINION AND JUDGMENT ENTRY

Decided: May 12, 2025
Judgment: Affirmed

*John D. Lewis*, Law Director, City of Conneaut, 294 Main Street, Conneaut, OH 44030 (For Plaintiff-Appellee).

*Andrew S. Lock*, Green Haines Sgambati, 100 East Federal Street, Suite 800, Youngstown, OH 44503 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Maureen Riley, appeals her conviction for Telecommunications Harassment following a jury trial held in the Conneaut Municipal Court of Ashtabula County. For the following reasons, we affirm Riley's conviction.

{¶2} On December 28, 2023, the City of Conneaut filed a complaint in the municipal court charging Riley with Telecommunications Harassment, a first-degree misdemeanor in violation of Section 537.10(b)(1) of the Codified Ordinances of the City of Conneaut ("City Ord. 537.10(b)(1)"). She was accused of sending harassing text messages and videos to an individual named Brandy. Riley pleaded not guilty, and a jury

trial was held on October 10, 2024.  At trial, the city presented testimony from Brandy and Officer Mike Delisle of the Conneaut Police Department.

{¶3}    Brandy testified to the following.  In December 2023, Brandy was living with her 76-year-old father at 498 Detroit Street.  Riley, who was a friend of Brandy's father, occasionally spent the night at their home.  Brandy and Riley did not get along, and Brandy did not approve of Riley's relationship with Brandy's father.  On December 24, 2023 (Christmas Eve), while Brandy was visiting her mother's house "one street over," Brandy received a few text messages on her phone that were sent from a phone number she identified as belonging to Riley.  The messages included two short videos totaling 9 seconds in length of Brandy and Brandy's father watching a football game at their home earlier that day; Brandy's father was seated in a recliner in the living room, and Brandy was walking back and forth from the kitchen.  One text message, referring to a video of Brandy snapping a towel while watching the game, read, "I saw u snap that chair with a wet towel I think they call that furniture-itis lol.  Merry christmas."  Other text messages that accompanied the videos read, "Wtf asshole"; "Real nice Brandy u got issues"; and "What a fn sicko."

{¶4}    Brandy did not find the messages to be funny or a joke.  She was "upset," "disgusted," "angry," and "felt like it was creepy" because she was unaware that there was a camera set up to record them in her father's home.  She did not respond to the messages to ask Riley to stop or tell her that she was bothered by the messages.

{¶5}    Brandy returned to her father's house and showed him the videos.  They located a phone in her father's flannel shirt in a closet that had no door.  According to Brandy, it was her father's own phone, and the location of the phone had the same view as shown in the videos Brandy had received.

{¶6} Brandy then went to the Conneaut Police Department. She provided a written statement and emailed the text messages and videos to Officer Delisle.

{¶7} Officer Delisle testified that Brandy came to the police station that evening and appeared upset. Officer Delisle took Brandy's report and forwarded the texts and videos to the law department. He did not speak with Riley or Brandy's father regarding the situation.

{¶8} The defense did not present any witnesses, and the municipal court denied Riley's Crim.R. 29 motion for judgment of acquittal. The jury found Riley guilty of Telecommunications Harassment.

{¶9} On November 20, the municipal court sentenced Riley to a suspended 180-day jail term subject to unsupervised community control for five years, imposed a $250 fine, and ordered Riley not to have any contact with Brandy.

{¶10} Riley appeals her conviction, raising two assignments of error:

[1.] There was insufficient evidence to find Appellant guilty of Telecommunications Harassment.

[2.] Appellant's conviction of Telecommunications Harassment was against the manifest weight of the evidence.

{¶11} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

Case No. 2024-A-0101

proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶12} When considering whether a judgment is against the weight of the evidence, "a reviewing court asks whose evidence is more persuasive—the [prosecution's] or the defendant's?" *State v. Wilson*, 2007-Ohio-2202, ¶ 25. The court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983).

{¶13} Riley was charged with Telecommunications Harassment in violation of City Ord. 537.10(b)(1), which provides, "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."

{¶14} "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and . . . in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). "When the offense involves a . . . telecommunication [or] telecommunications device . . . the offender may be tried in any jurisdiction . . . from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a . . . telecommunication [or] telecommunications device . . . or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense." R.C. 2901.12(I)(1).

Case No. 2024-A-0101

{¶15}   A municipal court "has jurisdiction over the violation of any ordinance of any municipal corporation within its territory," R.C. 1901.20(A)(1), and R.C. 1901.01(A) expressly provides for a separate municipal court for the city of Conneaut.  Accordingly, jurisdiction and venue lie within the Conneaut Municipal Court if the telecommunications at issue were transmitted either from or into the city of Conneaut.

{¶16}   Here, there is no evidence of where the telecommunications were transmitted *from* and scant evidence of what jurisdiction the telecommunications were transmitted *into* on the evening of December 24, 2023.  Brandy merely testified that she lived with her father at "498 Detroit Street," without reference to city or county, and that she received the text messages while "one street over" at her mother's house.  Riley did not challenge the city of Conneaut as the proper venue for her trial.  And when instructing the jury, the municipal court—without objection—noted that there was no dispute about whether venue had been proven.  Accordingly, we consider that the issue of venue has been conceded, and we proceed with Riley's assignments of error.

{¶17}   In her first assignment of error, Riley contends that the municipal court erred in denying her Crim.R. 29 motion because the evidence was insufficient to establish that the messages were sent with the requisite intent.  We disagree.

{¶18}   The city was required to prove that Riley transmitted the messages with purpose to abuse, threaten, or harass another person.  At trial, the parties agreed that "threaten" did not apply here.  Thus, the municipal court instructed the jury only as to "abuse" and "harass."  Neither of these words are defined in the city ordinance, nor are they defined in R.C. 2917.21, the analogous state statute.  The jury was therefore instructed that the ordinance prohibits conduct that is easily definable by the common everyday meaning of those words; a person of ordinary intelligence would know what type

Case No. 2024-A-0101

of conduct is prohibited. *See Ohio Jury Instructions*, CR 517.21(B) (Rev. Jan. 17, 2017), citing *State v. Cress*, 2006-Ohio-6501, ¶ 37 (where the General Assembly does not provide a definition of a term, the court "presume[s] that it intended that the term be given its common meaning in accordance with the general rules of grammar") and *State v. Kronenberg*, 2015-Ohio-1020, ¶ 34 (8th Dist.).

{¶19} When considering Riley's conviction, the critical inquiry is not whether Brandy in fact felt abused or harassed by the communications but whether the communications were sent with purpose to abuse or harass. *See City of Hamilton v. Combs*, 2019-Ohio-190, ¶ 20 (12th Dist.), citing *Kronenberg* at ¶ 15, citing *State v. Bonifas*, 91 Ohio App.3d 208, 211-212 (3d Dist.1993). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶20} In the absence of direct evidence, a defendant's intent to abuse or harass may be established by the facts and circumstances surrounding the telecommunication. *See Kronenberg* at ¶ 15. "The [prosecutor's] burden to establish the defendant's specific intent is not met, however, by establishing only that the defendant knew or should have known that his conduct would *probably* abuse . . . or harass the recipient." (Emphasis in original.) *State v. Shuck*, 2020-Ohio-6989, ¶ 14 (9th Dist.). "'The legislature has created this substantial burden to limit the statute's scope to criminal conduct, not the expression of offensive speech.'" *Id.*, quoting *State v. Ellison*, 2008-Ohio-5282, ¶ 15 (1st Dist.).

{¶21} Relevant to this context, the common everyday meaning of "abuse" means "[t]o injure (a person) physically or mentally," and "harassment" refers to "[w]ords,

Case No. 2024-A-0101

conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation." *Black's Law Dictionary* (12th Ed. 2024); *see also Shuck* at ¶ 15. Of note, the legislature in 1999 deleted the word "annoy" from R.C. 2917.21, the analogous state statute. Thus, for conduct to rise to the level of criminal harassment, we consider whether the accused intended to alarm or cause substantial emotional distress to the recipient. *See Ellison* at ¶ 14. In this context, "alarm" may refer to "[a] feeling of worry that something dangerous or bad might happen, esp. when the feeling is suddenly aroused." *Black's Law Dictionary* (12th Ed. 2024).

**{¶22}** Brandy testified that she and Riley "did not get along whatsoever" and that she did not approve of her father's relationship with Riley. The text messages that Brandy received included vulgar and offensive language. More significant is that the videos accompanying the text messages had been taken surreptitiously, without Brandy's knowledge or consent, while she was in her home. Viewing this evidence in a light most favorable to the city, reasonable minds could have reached different conclusions as to whether the messages were sent with purpose to abuse or harass. Accordingly, because there was sufficient evidence of the requisite intent, Riley's first assignment of error is without merit.

**{¶23}** In her second assignment of error, Riley contends that her conviction is against the manifest weight of the evidence. Again, we disagree. This is not the exceptional case in which the evidence weighs heavily against the conviction.

**{¶24}** Riley contends that the messages may have been intended as a joke. However, the jury was entitled to consider all the facts and circumstances—including the tense relationship between Riley and Brandy, the content of the messages, and the

Case No. 2024-A-0101

surreptitious video recording—when determining whether the messages were sent with purpose to abuse or harass another. Riley also argues that the messages did not constitute harassment because they were sent in an isolated manner. However, the ordinance does not require more than a single communication, if it is sent with the requisite intent, to establish telecommunications harassment. *See, e.g., State v. Stanley*, 2006-Ohio-4632, ¶ 13 (10th Dist.) (discussing R.C. 2917.21, the analogous statute). Additionally, the fact that Brandy felt "upset," "disgusted," "angry," and "creeped out" by the messages, while not determinative, provides context for understanding how the jury might have perceived the purpose of such communications.

{¶25} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Riley's conviction must be reversed. Accordingly, Riley's second assignment of error is without merit.

{¶26} We affirm the Conneaut Municipal Court's judgment of conviction.

ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-A-0101

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Conneaut Municipal Court is affirmed.

Costs to be taxed against appellant.

_____
JUDGE MATT LYNCH

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-A-0101