[Cite as *State v. Bryant*, 2022-Ohio-4108.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220144 |
| | | TRIAL NO. 21CRB-1591 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| KHALID BRYANT, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 18, 2022


*Emily S. Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Elyse Deters*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} Defendant-appellant Khalid Bryant offered to drive Janell Roberts, the mother of his daughter, home one night from her father's house. After Mr. Bryant pulled off at a gas station, an argument between the two ensued. During the dispute, Mr. Bryant allegedly grabbed her chin, squeezed her cheeks with his hand, and later struck her across her right cheek. After this incident, Mr. Bryant was charged with first-degree misdemeanor domestic violence in violation of R.C. 2919.25. Following a bench trial, the court found him guilty. He now appeals, presenting a single assignment of error attacking the sufficiency of the evidence supporting his conviction and raising a manifest weight of the evidence challenge. After a thorough review of the record, however, we overrule his assignment of error and affirm the trial court's judgment.

I.

{¶2} Ms. Roberts and Mr. Bryant began their relationship as friends but unexpectedly had a baby girl together. Although Ms. Roberts enjoys full custody of the child, the two agreed to raise her together. According to Ms. Roberts' testimony, on a night in late 2020/early 2021, she was at her father's house when Mr. Bryant arrived to retrieve their daughter. Mr. Bryant offered to provide her a ride home on his way.

{¶3} En route, Mr. Bryant stopped at a busy Shell gas station and parked to the left of a car occupied by four or five people—Ms. Roberts sat in the passenger seat of the car with their daughter in the back. Ms. Roberts noticed the man in the neighboring car's passenger seat staring at her and, under her breath, she muttered, "What are they looking at?" Mr. Bryant sauntered out of the car and approached the

neighboring car's passenger side, confronting that passenger. The discussion fortunately did not escalate, however, and eventually Mr. Bryant proceeded to walk inside the gas station.

{¶4} Meanwhile, Ms. Roberts opened her door and asked the passenger what Mr. Bryant said to him. Noticing this exchange, Mr. Bryant turned around and came back out of the store, accusing her of being disrespectful. Ms. Roberts retorted that she was not "his girl" and admonished him to go back into the store and get what he needed. She then resumed her conversation with the neighboring car before Mr. Bryant came back out again.

{¶5} According to her testimony, Mr. Bryant responded by grabbing Ms. Roberts' chin, forcing her to look at him, and reiterating her disrespectfulness. Ms. Roberts warned him not to put his hands on her, reminding him that the two were not in a relationship but were merely raising a child together. The two continued to argue for a bit, chest to chest.

{¶6} Ms. Roberts eventually took a step back, raising her hands to create space in a defensive posture. Mr. Bryant then struck her across the cheek, causing her cheek to swell and leaving a bruise. Ms. Roberts eventually went home, although it remains unclear whether Mr. Bryant drove her home or if she walked. After a discussion with her father, Ms. Roberts filed a report with the police to ensure her safety. Mr. Bryant was charged with domestic violence in January 2021, and a trial convened in March of 2022.

{¶7} At trial, confusion reigned about when the incident occurred—the city prosecutor questioned Ms. Roberts where she encountered Mr. Bryant on January 22, 2021, to which she insisted "[the incident] didn't happen in January." On cross-

3

examination, Ms. Roberts insisted that the incident occurred on December 22, 2020, but suggested that the case was filed in January 2021—and Mr. Bryant's counsel clarified that her 911 call took place on January 24, 2021. Also on cross, defense counsel inquired whether Mr. Bryant was indeed the child's father. In response, Ms. Roberts indicated that she had a DNA test submitted which allegedly established a 99.99% likelihood of paternity. On redirect, Ms. Roberts testified that Mr. Bryant provided for the child as best as he could and often referred to the child as his. She also mentioned possessing photos of her injuries that she gave to parole to assist in their investigation of the incident—photos that did not emerge at trial.

{¶8} In finding Mr. Bryant guilty, the trial court indicated that it believed the assault had occurred by virtue of Ms. Roberts' testimony and further concluded that the date of the incident was not an element of the offense, sidestepping the confusion. Mr. Bryant appeals, asserting that his conviction was not supported by sufficient evidence and ran contrary to the manifest weight of the evidence.

II.

{¶9} We filter Mr. Bryant's sufficiency and manifest weight claims through familiar standards: "To determine whether a conviction is supported by sufficient evidence, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And " '[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate

4

court to substitute its judgment for that of the factfinder.' " (Emphasis removed) *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279. Whether the evidence sufficed to support the conviction presents a legal question that we review de novo. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.).

{¶10} In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

A.

{¶11} Mr. Bryant initially takes issue with the adequacy of the evidence for the trial court to find that he was the biological father of Ms. Roberts' daughter. He highlights that a first-degree misdemeanor domestic violence conviction requires a familial relationship between the accused and the victim, R.C. 2919.25(A), emphasizing the lack of paternity evidence as the missing link in the state's case. Mr. Bryant faults the state for failing to produce the DNA test (referenced by Ms. Roberts) under the best evidence rule, Evid.R. 1002, much less any expert testimony to authenticate the test and its results.

{¶12} But the state is by no means obligated to tender formal paternity or related DNA documentation in order to establish the family member requirement. *State v. Davis*, 5th Dist. Licking No. 13 CA 55, 2014-Ohio-1197, ¶ 36 ("[W]e are

5

unpersuaded that the State must produce formal documentation of civil paternity establishment in order to meet the 'family member' element * * * the State can utilize testimonial evidence going to the issue of paternity, subject to a credibility determination by the jurors or the finder of fact."). Instead, Ms. Roberts' testimony sufficed to satisfy this element at trial.

{¶13} According to Ms. Roberts, although the two were never in a formal relationship, she and Mr. Bryant agreed to raise their child together. To that end, Mr. Bryant took care of the child and sought to provide for her even though Ms. Roberts had custody—he procured clothes and toys for the child, and at times retrieved and took care of the child, as he did on the night in question. Consistent with that conduct, Ms. Roberts testified that Mr. Bryant acknowledged, on numerous occasions, that the child was indeed his daughter.

{¶14} Viewed in a light most favorable to the state, *Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124 at ¶ 12, this testimony carried the state's burden. *See State v. Parish*, 5th Dist. Stark No. 2013CA00141, 2014-Ohio-1410 (affirming the trial court's conclusion that the state had met its burden of production for the family member element after the victim provided testimony of the family relationship between her and the defendant, and the defendant did not present evidence to challenge the testimony). Although reasonable minds can disagree about conflicting evidence and testimony, *Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119 at ¶ 20, the trial court found Ms. Roberts credible, and Mr. Bryant fails to point to any conflicting evidence—he merely cries foul regarding the absence of the DNA test. But Ms. Roberts' testimony obviated the need for the state to dig up the actual report (particularly in the absence of any contradictory evidence).

**{¶15}** Relatedly, Mr. Bryant protests the admission of lay testimony about the DNA test results—he suggests that the court should have required the state to offer the test itself and call a separate expert witness to testify about the DNA test results. But as the state highlights, Mr. Bryant failed to object or move to strike Ms. Roberts' testimony concerning the DNA test results, so he did not preserve any hypothetical error for appellate review. *See State v. Mitchell*, 8th Dist. Cuyahoga No. 88977, 2007-Ohio-5994, ¶ 83 ("Appellant did not object to [the] testimony. Failure to object to the * * * testimony waives all but plain error on appeal. *State v. Bays*, 15 26-27, 1999 Ohio 216, 716 N.E.2d 1126. We do not find plain error in allowing this testimony, especially in light of the other overwhelming evidence of appellant's guilt."). This testimony may not have elicited an objection because the state did not seek to admit the DNA test into evidence—Ms. Roberts simply explained her understanding of the DNA test results in response to questioning about the nature of her relationship to Mr. Bryant and her child. We see no plain error with respect to this testimony in light of the overall record at hand. And we find that the state presented sufficient evidence for the trial court to determine that a family relationship existed between Mr. Bryant and Ms. Roberts; we accordingly reject the sufficiency claim.

B.

**{¶16}** Turning to his manifest weight argument, Mr. Bryant protests that the trial court lost its way in finding the evidence credible that he caused physical harm to Ms. Roberts. In disputing this point, Mr. Bryant insists that no third party contacted the police or testified at trial about the incident, even though it allegedly occurred in front of a group of people. Mr. Bryant also highlights Ms. Roberts' riding home with him after the incident (a contested point, as noted above) and delaying a

week (according to her testimony) before calling the police. Overall, he dubs her testimony "self-serving" and emphasizes the lack of photographs of the injuries, despite her acknowledgment that such photographs exist.

{¶17} Essentially, Mr. Bryant targets Ms. Roberts' credibility as a witness. But "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. Simply because the trial court believed Ms. Roberts does not jeopardize the integrity of the conviction. *See State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17 (" '[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' "). As the trial court aptly put, "I'm otherwise convinced by the prosecuting witness [Ms. Roberts] that this occurred." We see nothing in the record to cast doubt on the conviction or to suggest that the trial court went astray here.

{¶18} Finally, Mr. Bryant seizes upon the discrepancy about the date of the incident.[1] This issue arose when the prosecutor questioned Ms. Roberts about the incident happening on January 22, 2021, because the charging document reflects that date. But she insisted that everything transpired on December 22, 2020. Defense counsel highlighted on cross that the police report documented her calling 911 on January 24, 2021, but she did not budge in her account. It appears that Ms. Roberts was mistaken regarding the operative date, but we fail to see how this generates

---

[1] Mr. Bryant concedes that he waived any challenge to any defect in the complaint by failing to raise that matter below.

manifest weight concern. Despite the confusion, the trial court elected to believe Ms. Roberts and her testimony, recognizing that the date issue was not a material point in the context of this prosecution. This inconsistency, standing alone, fails to warrant reversal on manifest weight grounds.

\* \* \*

**{¶19}** In light of the foregoing analysis, we overrule Mr. Bryant's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.