**[Cite as *State v. Shinholster*, 2024-Ohio-1606.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230457 |
| | | TRIAL NO. B-2203537-A |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | |
| ANASIA SHINHOLSTER, | : | |
| Defendant-Appellant. | : | |

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230436 |
| | | TRIAL NO. B-2203537-B |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | *O P I N I O N.* |
| SAKARIA WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in C-230457; Affirmed in Part, Sentences Vacated, and Cause Remanded in C-230436

Date of Judgment Entry on Appeal: April 26, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Arica L. Underwood LLC* and *Arica L. Underwood*, for Defendant-Appellant Anasia Shinholster,

*Timothy J. McKenna*, for Defendant-Appellant Sakaria Williams.

**BERGERON, Judge.**

{¶1}   A takeout order placed by restaurant regulars that took too long sparked a request for a refund that led to a physical altercation, culminating in three shots fired and a gunshot wound.   Following the incident, codefendants-appellants Anasia Shinholster and Sakaria Williams (together, "Defendants") were tried jointly, and both women were convicted of two counts of felonious assault and sentenced to five-to-six years in prison.

{¶2}   We sua sponte consolidate their two separate appeals into a single opinion and judgment because Defendants raise overlapping self-defense arguments, challenging their convictions for felonious assault on manifest weight grounds.  Ms. Shinholster separately raises concerns about a clerical error in the judicial entry denying her Crim.R. 29 motion for a judgment of acquittal.  And Ms. Williams argues that the trial court failed to merge allied offenses of similar import and that the state failed to establish the "aiding and abetting" element of felonious assault.   After reviewing the record and the trial court's decision, we vacate Ms. Williams's sentences and remand her case (C-230436) for resentencing.  In all other respects, we affirm both judgments of the trial court.

I.

{¶3}   In July 2022, Ms. Shinholster arrived at a restaurant that she regularly frequented to pick up food that she and Ms. Williams had ordered.  Because the order was not yet ready, she had to wait for the food.  Sometimes, when that happened, the restaurant would offer a free soft drink for their troubles of having to wait longer than expected.  Accordingly, she requested a drink, but the restaurant was out of her preferred beverage and one of the restaurant's owners, Jason Williams, declined her

3

back-up request because the alternative drink she wanted was more expensive. Ms. Shinholster was on the phone with Ms. Williams throughout this encounter, with her annoyance growing by the minute.

{¶4} As Ms. Shinholster left with the order, she announced to Ms. Williams that she would no longer support the restaurant. Jason overheard this edict.[1] Testimony and evidence presented at trial established that Ms. Williams and Jason later exchanged phone calls, adding fuel to the simmering feud. The content of these phone calls, however, is disputed. According to Jason, although the calls grew heated at moments, no one said anything outrageous, and he eventually apologized. But Ms. Shinholster testified that during the last call (the only call to which she was a party), Jason was irate and disrespectful, hurling profanities at them.

{¶5} Following the phone calls, Defendants determined that they wanted a refund for their order. Together, they decided that Ms. Williams would enter the restaurant because the owners would be less familiar with her. Ms. Shinholster remained in the car with Ms. Williams on speaker phone, so she could hear what transpired inside the restaurant. Both women carried a gun, consistent with their normal practice, although Ms. Shinholster testified that she did not know whether Ms. Williams was armed that night.

{¶6} As Jason and his co-owner and wife, Peta Duffus, began to prepare to close their restaurant for the evening, Ms. Williams entered the restaurant, demanding a refund for her order. She claimed that she did not know what was in the order because her mother had placed it. There is conflicting testimony regarding where Jason was when the encounter began. Ms. Shinholster testified that she first heard

---

[1] Because Sakaria Williams and Jason Williams share a last name, we refer to Jason Williams as "Jason" throughout the opinion to avoid any confusion.

4

Ms. Williams having a cordial conversation with Jason. But Jason testified that he was in the back cleaning when Ms. Williams entered the restaurant and did not come to the front of the restaurant until he heard loud talking and the mention of a gun. And Ms. Duffus similarly testified that she was the first one to interact with Ms. Williams while Jason worked in the back.

{¶7} Regardless, it is undisputed that some time at or near the beginning of the encounter, Ms. Duffus began arguing with Ms. Williams, prompting Ms. Shinholster to enter the restaurant and Jason to call 911 as he advanced towards the front of the restaurant. According to Ms. Duffus, when Ms. Williams entered the restaurant, she flashed her gun. As evidenced by video footage, Ms. Williams walked behind the counter into the employees-only kitchen area. And Ms. Shinholster stood in the doorway to the employees-only area to prevent the door from closing. The owners did not invite Defendants into this area, and Ms. Duffus instructed them to leave the business multiple times during this portion of the encounter. Ms. Shinholster testified that they refused to leave because they were waiting for the police to show up to enable them to procure their refund.

{¶8} At some point during this time, Ms. Duffus picked up a knife, but she quickly put it down, and never came within an arm's length of the women while holding the knife. Nor did anyone touch the knife again during the encounter. Throughout this portion of video evidence admitted at trial, Ms. Duffus indicates that the women have a gun. And Ms. Shinholster informs the 911 operator that she had her concealed carry permit.

{¶9} Conflicting testimony exists as to how the physical altercation between Ms. Williams and Ms. Duffus began. Ms. Duffus testified that she tried to grab the

5

food bag from Ms. Williams to see what was in it, and Ms. Williams punched her, spit in her face, and turned around, and in response, Ms. Duffus grabbed her. Jason explained that he saw Ms. Duffus chase the women into the lobby and a physical altercation ensued. And Ms. Shinholster asserted that Ms. Duffus started pushing and shoving Ms. Williams out of the employees-only area with a dustpan, and Ms. Williams went to leave, but then Ms. Duffus "attacked" her, punching her and pulling her hair. Ms. Shinholster insisted that Ms. Williams did not spit at anyone or touch anyone until she needed to defend herself. Once the physical altercation began, it is undisputed that Ms. Duffus held Ms. Williams pinned on the ground, as the two women continued to tussle. Ms. Duffus testified that, at some point during this altercation, she removed Ms. Williams's gun from her bag and slid it under the bulletproof glass at the counter, into the cash register area (presumably to ensure that no one would use it).

{¶10} Ms. Shinholster intervened to assist Ms. Williams, prompting Jason to attempt to remove her from the restaurant. He and Ms. Shinholster engaged in a physical altercation at the door of the restaurant as he sought to shove her out of the restaurant, while she fought to remain inside (and later regain entry). During this time, Ms. Duffus still had Ms. Williams pinned on the ground. Ms. Williams continued to call for help, eventually encouraging her companion to "shoot the bitch."

{¶11} Believing that he locked Ms. Shinholster out of the restaurant, Jason turned to address the encounter between the two women rolling around on the floor. However, Ms. Shinholster regained entry and fired three shots at him. In her recounting of the story, she asserts that he reached into Ms. William's purse and pulled out "what looked like to me resembled like a hammer like object" and moved towards her when she decided to fire three shots in self-defense.

{¶12} After the shots were fired, Ms. Shinholster grabbed Ms. Williams, exited from the restaurant, called the police, and waited by their car for police to arrive. A detective arrived and interviewed, and then arrested, both women. Upon their arrival at the Justice Center, officers denied them entry because of their injuries, so they first went for treatment at a hospital before landing in jail. Ms. Shinholster testified that she is recovering from a concussion that occurred during the melee, and that she also suffered a scraped knee and bruised arms. And she testified that the photo evidence of Ms. Williams (which showed a large bump on her head) accurately portrayed how she looked following the incident. Jason required surgery for his injury and suffers ongoing pain from his gunshot wound.

{¶13} Both Defendants were charged with two counts of felonious assault, felonies of the second degree, in violation of R.C. 2903.11(A)(1) and (2), with firearm specifications. Both women waived their rights to a jury trial. At trial, Ms. Duffus, Jason, Detective Carl Blackwell, and Ms. Shinholster testified (notably, Ms. Williams did not testify). The defense and prosecution also tendered exhibits, including 911 calls, cellphone footage, and various photographs. Ultimately, the trial court found Defendants each guilty of both counts and sentenced them to the mandatory minimum of two-to-three years on count 1, plus three years on the firearm specification, and count 2 running concurrently to count 1, for five-to-six-year indeterminate sentences.

## II.

{¶14} On appeal, Ms. Shinholster and Ms. Williams each raise three assignments of error, with overlapping self-defense arguments. We first address their self-defense arguments. We then proceed to analyze each defendant's remaining assignments of error.

A.

**{¶15}** In Ms. Shinholster's first and second assignments of error and Ms. Williams's third assignment of error, Defendants challenge their convictions for felonious assault as against the manifest weight of the evidence, maintaining that the state failed to prove beyond a reasonable doubt that they were not acting in self-defense. Ms. Williams also raises a sufficiency challenge to the self-defense claim. But, based on the recent change in the law regarding self-defense claims, the sufficiency of the evidence standard applies to the defendant's burden of production, whereas a manifest weight of the evidence standard applies to the state's burden of persuasion. *See State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26. Thus, "[t]he Ohio Supreme Court has held that a self-defense claim is not an element of the offense that must be proven by the state and, therefore, it is not subject to review for sufficiency of the evidence." *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 37, citing *Messenger* at ¶ 24-27. Consequently, we only evaluate Defendants' convictions through a manifest weight lens.

**{¶16}** When a defendant raises a self-defense claim, once evidence is presented that tends to support that their use of force was in self-defense or in defense of another, " ' "the burden of persuasion requires the *state* to disprove at least one of the elements of self-defense * * * beyond a reasonable doubt." ' " (Emphasis added.) *State v. Mitchell*, 2023-Ohio-2604, 222 N.E.3d 156, ¶ 16 (1st Dist.), quoting *State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 10, quoting *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49. "Unlike the burden of production, which concerns a party's duty to introduce *enough* evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view

the facts in a favorable manner to them." (Emphasis sic.) *Mitchell* at ¶ 15, citing *Messenger* at ¶ 17.

{¶17} We will not reverse a conviction unless "the evidence weighs heavily against [it]." *Id.* And we will not "second-guess the factfinder's adjudication of conflicting evidence" except under "the most exceptional circumstances." *Id.* Thus, when reviewing a manifest weight challenge involving self-defense, we must determine if "the factfinder disregarded or overlooked compelling evidence that weighed against conviction." *Gibson* at ¶ 8, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997).

{¶18} Defendants insist that the state failed to prove beyond a reasonable doubt that they did not act in defense of themselves or of another. Self-defense and defense of another are affirmative defenses that legally excuse otherwise unlawful conduct. *See Messenger,* 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, at ¶ 21 ("The plain language of R.C. 2901.05(A) reflects that self-defense is still an affirmative defense.").

{¶19} Here, the facts that both Defendants were injured during the altercation and that they claimed that the restaurant owners started the brawl tend to support the conclusion that they acted in self-defense. Therefore, the burden shifted to the state to disprove one or more of the elements of self-defense in the use of deadly force: "(1) the defendant[s] [were] not at fault in creating the situation giving rise to the affray; (2) the defendant[s] had a bona fide belief that [they were] in imminent danger of death or great bodily harm and that [their] only means of escape from such a danger was in the use of such force; [or] (3) the defendant[s] did not violate any duty to retreat or avoid the danger." *Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-

4976, at ¶ 48, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). The state must only disprove one element beyond a reasonable doubt to defeat the self-defense claim. *See State v. Terry*, 1st Dist. Hamilton No. C-220379, 2023-Ohio-2074, ¶ 9, citing *Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, at ¶ 10.

{¶20} Under the first element of a self-defense claim, the state presented evidence establishing that Defendants were at fault in creating the situation giving rise to the affray. For the purposes of self-defense, "the first aggressor in an incident is 'at fault.' " *State v. Santana*, 2d Dist. Montgomery No. 29348, 2022-Ohio-4118, ¶ 30, quoting *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 9, citing *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708, ¶ 23 (2d Dist.). Defendants argue (and Ms. Shinholster testified) that they were not at fault in creating the situation leading to the shooting because Jason attacked Ms. Shinholster, and Ms. Duffus attacked Ms. Williams. But Ms. Duffus testified that Ms. Williams spit on her and threw the first punch. Similarly, Jason testified that he did not get physically involved with Ms. Shinholster until she engaged in the altercation between the other two women. Ms. Williams also claims that she was not at fault in creating the situation because at one point she put up her hood and turned to leave before Ms. Duffus launched an attack at her. She did not testify at trial, so the only evidence supporting this claim comes from the testimony of Ms. Shinholster indicating that they were going to leave at this point. But elsewhere during her testimony, Ms. Shinholster acknowledged that they refused to leave and were waiting for the police to show up.

{¶21} Moreover, the state demonstrated under the second element that Defendants were not in imminent danger of death or great bodily harm at the time Ms. Shinholster fired shots at Jason. Both Ms. Shinholster and Ms. Williams arrived for a

refund with guns. At trial, Ms. Shinholster testified that she "fear[ed] for her life" and that "[i]f [she] didn't fire that either Ms. Williams and I would have died that night." She also maintained that she "knew Ms. Williams could not breathe because of the position she was in." Yet testimony and evidence presented at trial demonstrate that Ms. Williams was loudly and continuously yelling for help throughout the encounter (not to mention exhorting her companion to shoot), demonstrating her ability to breathe. And while Ms. Shinholster testified that Jason was coming at her when she fired her gun, he testified that he thought he locked her out and had turned back to address the altercation between Ms. Duffus and Ms. Williams at the time the shots were fired.

**{¶22}** Furthermore, the state established that Defendants had a duty to retreat before using force in self-defense. Under the most recent amendments to R.C. 2901.09(B), a person does not have a duty to retreat before using force in self-defense if that person is in a place where they lawfully have a right to be. *Mitchell*, 2023-Ohio-2604, 222 N.E.3d 156, at ¶ 17. While Ms. Shinholster and Ms. Williams were lawfully able to enter the restaurant, by the time of the shooting, they were trespassers (and thus, were not in a place where they lawfully had a right to be). Testimony, video evidence, and the 911 call recordings establish that Ms. Williams entered the employees-only area of the restaurant without permission. And the restaurant owners repeatedly instructed Defendants to leave the restaurant before the physical altercation began. During the recording of her 911 call, Ms. Shinholster responded to Ms. Duffus's instruction to leave: "No, we ain't going nowhere."

**{¶23}** Self-defense claims are often rife with issues of credibility. And here, the state and Defendants largely presented two different versions of the events leading

11

up to the shooting. But when there is conflicting evidence presented at trial, we will not find that a conviction is against the manifest weight of the evidence where a trier of fact reasonably weighed the conflicting evidence. *See, e.g.*, *State v. Vandergriff*, 1st Dist. Hamilton No. C-200282, 2021-Ohio-3230, ¶ 9. On this record, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice in determining that the state proved beyond a reasonable doubt that Defendants did not act in self-defense. Although some evidence weighs in favor of the self-defense claims, the weight of the evidence points in the other direction. Therefore, we overrule Ms. Shinholster's first and second assignments of error and Ms. Williams's third assignment of error.

B.

{¶24} Turning to Ms. Shinholster's remaining assignment of error, she maintains the trial court erred by denying her Crim.R. 29 motion for a judgment of acquittal as to "counts 1 and 2" when she was the named defendant in the third and fourth counts of the indictment. Specifically, in light of this error, she claims that this court should vacate her conviction.

{¶25} Defendants were convicted of parallel counts of felonious assault: counts 1 and 2 against Ms. Williams and counts 3 and 4 against Ms. Shinholster. At the conclusion of the presentation of evidence at trial, both defendants moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court immediately denied. Two days later, the trial court journalized its denial of the Crim.R. 29 motion in two entries, one for each defendant. The entries for both defendants listed counts 1 and 2. But the entry regarding Ms. Shinholster should have listed counts 3 and 4 as those were the charges against her. Of note, however, the entry reflected the

12

appropriate offenses (both felonious assault). The court never corrected its error, but it later docketed an entry finding Ms. Shinholster guilty of the correct counts.

{¶26} A clerical error is " 'a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment.' " *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19, quoting *State v. Brown*, 136 Ohio App.3d 816, 819-820, 737 N.E.2d 1057 (3d Dist. 2000).

{¶27} Ms. Shinholster acknowledges that the error was clerical. And the court orally denied her Crim.R. 29 motion during trial. Further, the court later docketed an entry finding her guilty of the correct counts. While Ms. Shinholster argues her conviction should be vacated, we see no basis for vacating the conviction for what appears to be a scrivener's error that did not affect her substantial rights. Nor does she explain how she suffered any prejudice from this clerical error. Without any such argument, we see no utility in a remand to correct the error given that the ultimate judgment was correct.

{¶28} In light of the foregoing analysis, we overrule Ms. Shinholster's second assignment of error.

C.

{¶29} Finally, we consider Ms. Williams's remaining arguments. In her first assignment of error, she asserts that the trial court failed to merge the felonious assaults in counts 1 and 2 when they were the same offenses against the same victim and were part of the same immediate and continuing course of conduct. Rather than ordering Ms. Williams to serve count 2 concurrently, she argues that the court should have merged the two counts. This court reviews R.C. 2941.25 merger determinations

13

de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶30}** The Ohio Supreme Court has repeatedly found convictions under these sections of R.C. 2903.11 "are allied offenses of similar import * * * when both are committed with the same animus against the same victim." *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, ¶ 1; *see State v. Cotton*, 120 Ohio St.3d 321, 2008-Ohio-6249, 898 N.E.2d 959, ¶ 1. While a defendant who commits allied offenses of similar import may be tried for both offenses, they may "only be sentenced for one offense." *State v. Bohannon*, 1st Dist. Hamilton Nos. C-070859 and C-070860, 2010-Ohio-4596, ¶ 5.

**{¶31}** Here, Ms. Williams was charged with and convicted of felonious assault under both R.C. 2903.11 (A)(1) and (A)(2), which respectively address the infliction of serious physical harm and the use of a deadly weapon to cause or attempt to cause physical harm. Both charges result from her encouraging Ms. Shinholster to shoot and the resulting injury caused to Jason. The trial court sentenced her on both counts concurrently. But because the offenses were allied offenses of similar import, the court should have merged the counts at sentencing. Underscoring the point, the state concedes this error. Therefore, we sustain Ms. Williams's first assignment of error.

**{¶32}** In her second assignment of error, Ms. Williams claims that her conviction for felonious assault was against the manifest weight of the evidence and was not supported by sufficient evidence because the state failed to establish the required elements of the offense. Specifically, she contests the "aiding and abetting" element of R.C. 2923.03(A)(2), arguing that she did not act in concert with Ms. Shinholster (who indisputably fired the shots) to commit felonious assault.

14

**{¶33}** When reviewing a sufficiency challenge, this court asks " ' "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *State v. Robinson*, 1st Dist. Hamilton Nos. C-230394 and C-230395, 2024-Ohio-847, ¶ 11, quoting *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. " ' "[W]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact.' " " (Emphasis deleted.) *Id.*, quoting *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279.

**{¶34}** This court sits as the "thirteenth juror" when reviewing whether a conviction runs counter to the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. "[W]e review the evidence, the credibility of witnesses, and the entire record." *State v. Bryant*, 2022-Ohio-4108, 201 N.E.3d 482, ¶ 10 (1st Dist.), citing *Thompkins* at 388. But we will not reverse the conviction unless "the trial court ' "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶35}** It is undisputed that Ms. Shinholster shot Jason, so Ms. Williams's guilt is premised on aiding or abetting. And to support a conviction for aiding or abetting under R.C. 2923.03(A)(2), " 'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.'

15

" *State v. Woodard*, 1st Dist. Hamilton Nos. C-220364 and C-220365, 2023-Ohio-1989, ¶ 15, quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. " ' "[I]n order to aid or abet, whether by words, acts, encouragement, support, or presence, there must be something more than a failure to object." ' " *State v. Crosby*, 8th Dist. Cuyahoga No. 106504, 2018-Ohio-3793, ¶ 12, quoting *State v. Mendoza*, 137 Ohio App.3d 336, 342, 738 N.E.2d 822 (3d Dist.2000), quoting *State v. Stepp*, 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342 (4th Dist.1997).

{¶36} Ms. Williams maintains that no evidence existed of a common plan or scheme to fight or shoot anyone. But the state counters that Defendants acted in concert to cause harm to Jason with a deadly weapon. Defendants planned to get a refund from the store. They decided that Ms. Williams should enter the store because the owners were less likely to recognize her. And Ms. Shinholster would wait in the car on speaker phone, so she could hear everything that transpired inside (and come to her aid if necessary). Ms. Williams set the plan into motion by entering the store. And although Ms. Shinholster testified that she did not know Ms. Williams entered the store with her firearm, she also stated it was their general practice to carry their firearms, and both women were armed at the time of the affray.

{¶37} Ms. Duffus had Ms. Williams pinned to the ground throughout most of the physical encounter, so Ms. Williams was unable to access her firearm. However, there is undisputed evidence that at least once during the encounter, Ms. Williams instructed Ms. Shinholster to shoot. Ms. Shinholster testified that she did not remember Ms. Williams saying "shoot" or anything like that, but the prosecutor played Jason's 911 call and asked her if she could identify who yelled, "Shoot the bitch." Ms. Shinholster identified Ms. Williams as the speaker. And Ms. Duffus testified that Ms.

16

Williams instructed Ms. Shinholster to "shoot them." While on the phone with 911 following the event, Ms. Duffus also stated: "The other one was saying shoot them, shoot them."

**{¶38}** In *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 1, the defendant and members of his gang arrived at a party in search of an individual who was involved in a previous altercation with a member of their gang. Witnesses testified that the defendant yelled "Shoot" and "Shoot the [expletive]." *Id.* Shots were fired, and three individuals were injured. *Id.* Although the identity and the specific target of the shooter were uncertain, the Ohio Supreme Court upheld the juvenile court's finding of delinquency under the principle of complicity by aiding and abetting because "the juvenile court evaluated the evidence, determined that the [defendant] had actively encouraged a member of his gang to shoot at someone at the [victim's] home with the specific intent to cause harm, and found that the state had sufficiently shown transferred intent." *Id.* at ¶ 17.

**{¶39}** Like the defendant in *In re T.K.*, Ms. Williams encouraged someone she knew to be armed to shoot. Accordingly, based on these facts, Ms. Williams's conviction for felonious assault was supported by sufficient evidence and was not against the manifest weight of the evidence. We overrule her second assignment of error.

\* \* \*

**{¶40}** In the appeal numbered C-230457, we overrule Ms. Shinholster's assignments of error and affirm the trial court's judgment.

**{¶41}** And in the appeal numbered C-230436, we sustain Ms. Williams's first assignment of error and overrule her second and third assignments of error. We

vacate her sentences and remand the case for resentencing at which the state must elect which of the allied offenses it will pursue against her. In all other respects, we affirm the trial court's judgment.

Judgment affirmed in C-230457;
Judgment affirmed in part, sentences vacated, and cause remanded in C-230436.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.