[Cite as *State v. Henry*, 2025-Ohio-5333.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250200 |
|  |  | TRIAL NO. | C/24/CRB/18377 |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| KELVIN HENRY, | : |  |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/26/2025 per order of the court.**

**By:**_____
   **Administrative Judge**

[Cite as *State v. Henry*, 2025-Ohio-5333.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250200 |
|  |  | TRIAL NO. | C/24/CRB/18377 |
| Plaintiff-Appellee, | : |  |  |
|  |  |  |  |
| vs. | : |  |  |
|  |  | *O P I N I O N* |  |
| KELVIN HENRY, | : |  |  |
|  |  |  |  |
| Defendant-Appellant. | : |  |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 26, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica R. Moss*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1} On October 24, 2024, A.R. and A.G. were involved in a heated text message exchange. Defendant-appellant Kelvin Henry was not involved in that exchange. A.R. and her friend then went to A.G.'s home to coax A.G. to come outside to fight. A.G., however, chose not to go outside because her son and younger brothers were at home with her. In addition, she had just learned that she was pregnant. Although Henry was not involved in the dispute between A.R. and A.G., he decided to go with A.G. to A.R.'s house later that evening. Not surprisingly, an argument ensued between A.R. and A.G. After hearing the commotion, A.R.'s younger brother, M.D., came outside and attempted to get A.R. and her friend to go back into their house. Amid the chaos, Henry punched M.D. in the face.

{¶2} Henry appeals his conviction for assault, a first-degree misdemeanor under R.C. 2903.13, arguing the trial court erred by rejecting his self-defense claim. For the reasons stated herein, we affirm the trial court's judgment.

## I. Factual and Procedural History

{¶3} After being charged with assault, Henry filed a notice of self-defense. At trial, there were varying versions of what led to M.D. getting punched in the face.

### A. The Trial

### A.R.'s Testimony

{¶4} A.R. testified that she was at home when she received a text that A.G. was outside of her house, so A.R. and her friend went outside and began to argue with A.G. A.R. confirmed that the argument was not with Henry, but with A.G. She stated that Henry seemed to be trying to "deescalate" the situation and he had stated that nobody was going to be fighting because A.G. was pregnant.

{¶5} A.R. testified that her 16-year-old brother, M.D., came outside and got

in between the two groups. A.R. stated that M.D. was wearing a basketball jersey and "very loose" pajama pants that night. A.R. testified that, when Henry asked who M.D. was, she told him that it was her brother and Henry had "nothing to worry about." A.R. recalled that M.D. was facing her and trying to get A.R. and her friend to go back into the house. A.R. stated that Henry said, "[S]ince I can't hit you all, I am going to hit him," then turned M.D. around and punched him three times in the face. A.R. testified that M.D. went into the house and, after their mother came outside, Henry and A.G. left.

### M.D.'s Testimony

{¶6}     M.D. testified that he was awakened by the sound of his sisters[1] yelling outside, and when he went outside, he saw Henry and A.G. arguing with A.R. "down the hill" on the property. M.D. stated that he was concerned because he saw "dudes" "kind of being aggressive" and "walking up" on his sisters so he got in between the two groups. M.D. explained that was facing his sisters with his back to Henry and A.G., and his arms were held out in the shape of a "T" "kind of pushing [his sisters] back" trying to get them to go back into the house. M.D. testified that he never approached Henry or A.G. or attempted to strike either of them.

{¶7}     According to M.D., he was walking away "halfway up the hill" when Henry turned him around and punched him once in the face with a closed fist. M.D. testified that he became disoriented and fell to the ground, he felt pain, and his eye was bleeding and swelled shut. M.D. testified that he then went into his house to tell his parents what had happened. M.D. went to the hospital to have his injuries assessed.

---

[1] While A.R. referred to the other female as a "girlfriend," M.D. referred to both as his "sisters."

4

### *Officer Adam Mackay's Testimony*

**{¶8}** Officer Mackay, with the Colerain police, recalled that when he responded to the scene, M.D. was wearing a T-shirt and either shorts or pants, but his clothing was not "bulky." Officer Mackay testified that M.D.'s mother reported that she went outside to speak to Henry after M.D. was punched, and Henry told her that he punched M.D. because he felt intimidated by him. According to Officer Mackay, A.R. never informed him that Henry stated that he would hit M.D. since he could not hit A.R. and the other female.

**{¶9}** Officer Mackay testified that Henry told him over the phone that he punched M.D. because he felt threatened, but Henry hung up when Officer Mackay suggested that he turn himself in, claiming that he was "taking the rap for somebody else." Officer Mackay stated that Henry called back about 45 minutes later stating that he acted in self-defense because M.D.'s hands were in his pocket and Henry believed that he may have had a weapon. Officer Mackay testified that Henry did not describe any weapon that M.D. may have had, only that M.D. "had his hands in his pocket."

### *A.G.'s Testimony*

**{¶10}** A.G. testified that, after A.R. left her house, A.R. continued to threaten her via phone calls and messages, stating that she would harm A.G., her son, and her unborn child. A.G. explained that Henry came to her house later that evening, then they went to A.R.'s house together.[2] A.G. testified that Henry told A.R. that A.G. was not there to fight and Henry was there to help to end the dispute, but she and A.R. began to argue.

**{¶11}** A.G. testified that M.D. came outside and was "kind of walking back and

---

[2] A.R. testified that an unidentified male drove Henry and A.G. to A.R.'s house.

forth" behind A.R., but then M.D. "got in front" of A.R. and her friend as the women "stepp[ed] closer" to A.G. and Henry. A.G. stated that M.D.'s hands appeared to be "halfway" in the waistband of his pants as if he were "holding something there" but "that's just all [she] could really see from where she was sitting [in the car]."

{¶12} According to A.G., M.D. came closer to Henry, so Henry told him to "back up." A.G. testified that M.D. "took his hand out and kind of like stepped forward like he was stepping towards [Henry]." A.G. stated that Henry punched M.D. in the face once and caused him to fall to the ground, but offered to M.D. up help, saying, "I don't play about my life," and asked M.D. if he was okay.

### *The Trial Court Finds Henry Guilty of Assault*

{¶13} After hearing all the testimony, the trial court stated that it did not believe A.R.'s testimony, and that many of the witnesses were not credible. The trial court concluded that A.R. was at fault for starting the affray. It stated, "What is left is an innocent person walked up and somebody hit him. And so based on that, the finding is guilty." The trial court sentenced Henry to 180 days in jail but suspended those days, remitted court costs, and placed Henry on probation for six months.

{¶14} This appeal followed.

### *II. Analysis*

{¶15} Henry was convicted of assault, which is governed by R.C. 2903.13(A). The statute provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." *Id.* Both parties acknowledge that the law does not permit a person to provoke an assault or voluntarily enter an encounter, then claim self-defense. *See State v. Fields*, 2025-Ohio-2248, ¶ 21 (1st Dist.).

{¶16} On appeal, Henry argues in his sole assignment of error that the court erred by rejecting his self-defense claim because he met his initial burden of

6

production under R.C. 2901.05(B)(1) by presenting evidence that tended to show that he acted in self-defense and did not violate any duty to retreat under R.C. 2901.09(B). He asserts that the State did not disprove beyond a reasonable doubt that he acted in self-defense.

{¶17} The State responds that the trial court considered Henry's self-defense claim on its merits and concluded that Henry presented adequate evidence to meet his initial burden of production under R.C. 2901.05(B)(1). The State asserts that, therefore, the guilty verdict is an indication that the State disproved at least one of the elements of self-defense beyond a reasonable doubt.

### A. Standard of Review

#### 1. Defendant's Initial Burden of Production

{¶18} To establish that physical force was used in self-defense, a defendant has the initial burden of producing legally sufficient evidence to show, by a preponderance of the evidence, that (1) he was not at fault in causing the affray, (2) he had a reasonable belief of imminent danger of which the only means of escape was the use of force, and (3) he had no duty to retreat. *State v. Messenger*, 2022-Ohio-4562, ¶ 14; *see* R.C. 2901.05. The reference in R.C. 2901.05(B)(1) to a defendant's initial burden to produce "evidence presented that tends to support" self-defense indicates that the defendant's burden of production is not a heavy one and that it might even be satisfied through the State's evidence. *Messenger* at ¶ 22. A reviewing court must construe the evidence in a light most favorable to the defendant to determine whether the evidence—and any reasonable inferences about that evidence—would allow the trial court to find that all the elements of self-defense had been met. *Id.* at ¶ 25.

#### 2. Ohio's "Stand Your Ground" Law

{¶19} R.C. 2901.09(B)—Ohio's "Stand Your Ground" law—provides, "a person

has no duty to retreat before using force in self-defense . . . if that person is in a place in which the person lawfully has a right to be." *State v. Warth*, 2023-Ohio-3641, ¶ 30 (1st Dist.). The Ohio Supreme Court has stated, "And a new division, (C), added: 'A [fact finder] shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense . . . reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.'" *State v. Miree*, 2024-Ohio-5714, ¶ 8; R.C. 2901.09(C). In *Warth*, this court echoed the Ohio Supreme Court's conclusion and further concluded:

> But R.C. 2901.09(C) is not an absolute prohibition on introducing evidence involving the possibility of retreat. Rather, the statute only prohibits fact finders from considering evidence involving the possibility of retreat to determine whether the defendant's belief that force was necessary was reasonable. *Fact finders may, however, consider retreat evidence to determine who was at fault in creating the situation leading to the affray.*

(Emphasis added.) *Warth* at ¶ 31, citing *State v. Hughkeith*, 2023-Ohio-1217, ¶ 88 (8th Dist.) ("There is no language in the amended statute to suggest a fact finder is precluded from considering whether the defendant was the initial aggressor or whether the defendant attempted to withdraw from the situation when determining whether the defendant was at fault in creating the situation giving rise to the affray. The narrow language of the amended statute does not place on fact finders express restrictions on consideration of fault.").

### 3. The State's Burden of Persuasion

{¶20} If a defendant meets his initial burden, the State then bears the burden of persuasion to disprove at least one of the elements of self-defense beyond a

8

reasonable doubt. (Emphasis added.) *State v. Shinholster*, 2024-Ohio-1606, ¶ 16 (1st Dist.); *see* R.C. 2901.05(B)(1). The State must, therefore, convince the fact finder to view the facts in a light most favorable to it. *Id.* "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E).

{¶21} A reviewing court applies the manifest-weight standard here. *Shinholster* at ¶ 17. To conclude that the fact finder's adjudication of conflicting evidence was against the manifest weight of the evidence—which we reserve for only the most exceptional circumstances—this court must find that the fact finder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Gibson*, 2023-Ohio-1640, ¶ 8 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387-388 (1997). We accordingly sit as a "thirteenth juror" in this respect. *Id.*

*4. The Trial Court was Entitled to Believe M.D.'s Version of Events*

{¶22} A fact finder is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Warner*, 2024-Ohio-1949, ¶ 20 (1st Dist.). The trial court, therefore, was entitled to weigh the evidence, consider the motivations of the witnesses, and choose to believe all, part, or none of the testimony offered. *Thompkins* at 387. When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the fact finder believed the prosecution's testimonial evidence. *State v. McDaniel*, 2021-Ohio-724, ¶ 25 (1st Dist.).

{¶23} During oral argument, Henry argued that the trial court apparently found that he was an innocent party in the affray because the court stated that Henry and M.D. were "two innocent people" and, therefore, the State failed to disprove any elements of self-defense. Counsel also argued this statement indicates that the trial

court must have found portions of M.D.'s testimony incredible. We disagree, and conclude that the trial court's statement referred to the fact that M.D. and Henry were not a part of the initial disagreement between A.R. and A.G., not the moment when Henry punched M.D.

a. *The Trial Court Found that Henry was not Provoked*

**{¶24}** In his merit brief, Henry asserts that the trial court recognized Henry's belief that he was provoked, but it did not make an explicit finding as to his self-defense claim. The State, however, asserts that it proved that Henry was not provoked, and the trial court properly rejected Henry's self-defense claim. The State's assertion has merit.

**{¶25}** Notwithstanding Henry's intentions, he chose to go with A.G. to A.R.'s home knowing that A.R. wanted to fight A.G. Henry also chose to continue to remain in the thick of things as the argument escalated. As A.G. testified, A.R. and her friend were not backing down, which prompted M.D. to get in front of them as they stepped closer to A.G. and Henry. A.G. testified that M.D.'s hands were "halfway" in the waistband of his pants, "as if" he was holding "something" there, and she could not be certain what he could be holding from where she was sitting in the car. The trial court was entitled to disbelieve the suggestion that M.D. was holding a weapon or that he moved in any manner that would be perceived by an objectively reasonable person as threatening.

**{¶26}** The trial court was entitled to, instead, believe that M.D. was outside attempting to prevent A.R. and her friend from fighting, that M.D. never directly engaged Henry or A.G., and that M.D. had his back turned to Henry and A.G. while he attempted to get A.R. and her friend to go back into the house. The trial court could have also concluded that M.D. was walking away and Henry turned him around and

punched him in the face. Testimonial evidence further suggests that M.D. was wearing pajama pants, which were not bulky as Henry claimed. As noted by the trial court, " . . . under the self-defense thing . . . [Henry] did come to the scene and . . . he thought there was provocation, but I'm not sure that it is clearly shown." As we must give deference to the trial court's determination of credibility of the witnesses, Henry failed to show that he was provoked when he punched M.D.

b. *Use of Force Requires an Objectively-Reasonable Fear of Harm or Injury*

{¶27} Henry also argues that he did not use more force than reasonable. The reasonableness of a defendant's actions when acting in self-defense involves both a subjective and objective component. *State v. Hunt*, 2023-Ohio-1977, ¶ 49 (8th Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). With respect to the objective component, *Thomas* held that the fact finder must consider "all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack" to determine whether he reasonably believed that he was in imminent danger when he acted in self-defense. *Thomas* at 330. If this objective standard is met, the fact finder must then determine if the defendant subjectively had an honest belief, even if mistaken, that he or she was in imminent danger of death or serious injury.

{¶28} While the record shows that Henry met his initial burden of production on his self-defense claim, the court apparently concluded that using *any* force against M.D. was unreasonable, which is supported by the record evidence. Accordingly, we overrule Henry's sole assignment of error.

### III. Conclusion

{¶29} The trial court's guilty finding indicates the State met its burden of showing that Henry was not provoked and disproved Henry's self-defense claim

beyond a reasonable doubt. The evidence presented at trial that demonstrated Henry's knowledge (or lack thereof), along with the circumstances, history, and conditions at the time of the attack would not cause a reasonably objective person to believe that Henry was in imminent danger. Henry cannot reconcile his assertion that the trial court disbelieved parts of M.D.'s testimony with the trial court's statement that it was not convinced that Henry proved that he was provoked to punch M.D. Moreover, the trial court stated that M.D. was an innocent person who "walked up and someone hit him." It did not disregard or overlook compelling evidence that weighed against Henry's conviction. We, therefore, overrule Henry's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.